**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SIELC Technologies Corporation,

Plaintiff,

v.

Vladislav Orlovsky and Helix Research Solutions, Inc. d/b/a Helix Chromatography,

Defendants.

Case No.

## COMPLAINT

Plaintiff SIELC Technologies Corporation ("SIELC") brings this Complaint against defendants Vladislav Orlovsky ("Orlovsky") and Helix Research Solutions d/b/a Helix Chromatography ("Helix") (collectively, "Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiff SIELC Technologies Corporation ("SIELC") brings this action against Defendants to redress and enjoin a scheme by which Orlovsky—a former director, President, and 41.32% shareholder of SIELC who resigned in December 2017 and sold his shares back to SIELC pursuant to a Settlement and Share Purchase Agreement (the "Settlement Agreement")—secretly exploited SIELC's proprietary chromatography adsorbent and packing material technology to manufacture and supply copycat packing material to Zodiac Life Sciences PVT LTD ("Zodiac"), SIELC's former distributor in India.

2. SIELC developed its proprietary adsorbent and packing material formulations over more than two decades of research and development at substantial expense. These formulations constitute the essential "secret ingredient" of SIELC's chromatography columns—without them, one cannot reproduce the columns' analytical performance. The underlying chemistry is highly

complex and essentially impossible to reverse-engineer. Orlovsky acquired intimate knowledge of these trade secrets during his 15-year tenure as SIELC's co-founder, President, and director.

3. After departing SIELC in December 2017 and signing the Settlement Agreement—which, among other things, expressly required him to return all SIELC intellectual property and trade secrets and confirmed that he "shall remain subject to the Illinois and federal trade secret statutes"—Orlovsky, through his company Helix, began secretly manufacturing SIELC's proprietary Primesep-equivalent packing material and supplying it to Zodiac.

4. Zodiac then copied nearly 100 of SIELC's copyrighted technical application publications, substituted its own "Zodiac HST" column names in place of SIELC's recommended columns (for example, replacing SIELC's Primesep 100 column with the "Zodiac HST OG" column in a water-soluble vitamins application), and sold columns made with the copycat material to SIELC customers.

5. This scheme caused SIELC's sales through Zodiac to collapse from a steady and growing volume to a small number of columns in 2023 and zero columns in 2024, resulting in substantial lost profits to SIELC. The losses are permanent and continuing.

6. The scheme was uncovered in December 2025, when SIELC discovered that Zodiac's website contained near-verbatim copies of SIELC's technical applications with Zodiac's column names substituted. The scheme was conclusively confirmed on July 8, 2026, when a purchase order from Zodiac addressed to "Dr Vlad, President, HELIX Chromatography, USA"—ordering 25 grams of Primesep-equivalent packing material—was mistakenly sent to Orlovsky's former SIELC email address, revealing that Helix Chromatography had been the source of Zodiac's copycat packing material all along.

7. SIELC brings this action to recover the damages Defendants' misconduct has caused, to disgorge Defendants' ill-gotten gains, and to permanently enjoin Defendants from any further use, disclosure, or exploitation of SIELC's trade secrets.

## PARTIES

8. SIELC is an Illinois corporation with its principal place of business in Wheeling, Illinois. For over 24 years, SIELC has been developing, manufacturing, and selling proprietary chromatography adsorbents (also known as packing materials) and chromatography columns to customers worldwide in the chemical, pharmaceutical, food, and environmental industries. SIELC has published over 1,000 technical application studies demonstrating the analytical capabilities of its proprietary columns. SIELC's proprietary adsorbent formulations—the specialized chemical compositions that are packed into metal housing tubes to create functioning chromatography columns—represent the core of SIELC's intellectual property and competitive advantage.

9. Orlovsky is a resident and citizen of Illinois. He co-founded SIELC in 2002 and served as its President and a director from 2004 until his resignation in December 2017. During his tenure, Orlovsky owned 5,000 shares (41.32%) of SIELC's outstanding stock. In December 2017, pursuant to the Settlement Agreement resolving shareholder derivative litigation, Orlovsky resigned from all positions with SIELC, sold his shares back to the company, and agreed to certain restrictions regarding SIELC's intellectual property and trade secrets. Orlovsky is the founder, owner, and operator of Helix Chromatography.

10. Helix is an entity controlled and operated by Orlovsky, with its principal place of business in Prospect Heights, Illinois. Orlovsky is Helix's President. Through Helix, Orlovsky has been manufacturing and supplying SIELC's proprietary Primesep-equivalent packing material to

Zodiac Life Sciences PVT LTD and, upon information and belief, to other customers, in direct competition with SIELC.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over Count I of this Complaint pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 1836(c).

12. This Court has supplemental jurisdiction over the state law claims alleged in Counts II through V pursuant to 28 U.S.C. § 1367(a), because those claims arise from the same case or controversy as SIELC's DTSA claim.

13. This Court has personal jurisdiction over both Defendants because Orlovsky resides and conducts business in Illinois, Helix is headquartered in Illinois, SIELC is headquartered in Illinois, and the harm caused by Defendants was suffered in Illinois.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because both Defendants reside in and conduct business within this District. Moreover, a substantial part of the events and omissions giving rise to SIELC's claims occurred in this District, including but not limited to: SIELC's development of its proprietary trade secrets at its headquarters in Wheeling, Illinois; Orlovsky's acquisition of SIELC's trade secret information while serving as President, director, and shareholder of SIELC at its Wheeling headquarters; and Defendants' manufacture and supply of copycat packing material from Prospect Heights, Illinois. In addition, the Settlement Agreement provides that any dispute between the parties must be brought in a court of competent jurisdiction in Cook County, Illinois.

## FACTUAL BACKGROUND

### A. SIELC's Business and Trade Secrets

15. SIELC is a leading developer and manufacturer of proprietary chromatography adsorbents (packing materials) and chromatography columns used in analytical chemistry.

Chromatography columns are precision instruments consisting of a metal housing tube packed with a specialized adsorbent material that separates chemical compounds for analysis. A chromatography column's analytical performance is determined by the chemical composition and physical properties of its adsorbent packing material.

16. Over the past 24 years, SIELC has invested substantial time, resources, and expertise—totaling millions of dollars and tens of thousands of hours of research—in developing proprietary adsorbent formulations for its various column product lines, including the Primesep line (Primesep 100, Primesep 200, Primesep A, Primesep B, Primesep D, and others). These formulations constitute SIELC's core trade secrets and are the foundation of its competitive advantage.

17. The precise chemical composition, formulation ratios, manufacturing, and packing processes underlying SIELC's proprietary adsorbents are not generally known outside of SIELC and are not readily ascertainable by proper means. The chemistry involved is highly complex and practically impossible to reverse-engineer. This is precisely why SIELC's trade secrets derive substantial independent economic value from their secrecy and afford SIELC a significant competitive advantage in the global chromatography market.

18. SIELC has taken reasonable and extensive measures to maintain the secrecy of its proprietary adsorbent formulations, including limiting access to the formulations to key personnel on a need-to-know basis, maintaining physical and electronic security measures, and incorporating trade secret protections into its contractual agreements (including the Settlement Agreement with Orlovsky).

19. SIELC's columns are consumable products. They are used repeatedly and eventually depleted, requiring customers to repurchase them. Once a customer standardizes on a

particular SIELC column for a given analytical method (standard operating procedure or "SOP"), that customer becomes a recurring purchaser of that column. SIELC has published over 1,000 technical "applications" on its website (sielc.com) demonstrating which SIELC column to use for specific analytical separations, providing customers with proven methods that generate loyalty and repeat purchases.

20. SIELC sells its chromatography columns to customers worldwide, including through a network of international distributors. SIELC's products are used in interstate and foreign commerce throughout the United States and internationally, including in India through distributors such as Zodiac Life Sciences PVT LTD.

21. By virtue of his roles as SIELC's co-founder, President, director, and principal shareholder for more than fifteen years, Orlovsky had, and exploited, complete access to and intimate, detailed knowledge of SIELC's trade secrets, including the composition, chemistry, formulation, and manufacturing and packing processes underlying SIELC's proprietary Primesep adsorbents.

**B. The 2017 Shareholder Litigation and the Settlement Agreement**

22. SIELC was incorporated in Illinois in April 2002 by Yury Zelechonok ("Zelechonok") and Orlovsky. Zelechonok served as SIELC's CEO, and Orlovsky served as President of SIELC from 2004 onward and owned 5,000 shares, representing 41.32% of SIELC's outstanding stock.

23. In 2017, Orlovsky and Zelechonok were opposing parties in SIELC shareholder litigation captioned *Volpyansky, et al. v. Cromite, Inc., et al.*, Case No. 2017-CH-05839, in the Circuit Court of Cook County, Illinois (the "Litigation").

24. On or about December 16, 2017, Zelechonok, Orlovsky, and SIELC, among others, entered into the Settlement Agreement. A true and correct copy of the Settlement Agreement is attached as **Exhibit A**.

25. Under the Settlement Agreement, Orlovsky sold his 5,000 shares of SIELC stock back to SIELC for a total purchase price of $1,140,000, consisting of $40,000 paid at closing and a $1,100,000 secured promissory note. Orlovsky simultaneously resigned from all positions as a director, officer, agent, and employee of SIELC.

26. Section 14 of the Settlement Agreement contained mutual general releases of claims arising on or before the Effective Date. Critically, however, Section 16 expressly excluded from the mutual releases any "claims arising after the date the Parties execute this Agreement." The claims asserted in this Complaint arise from Defendants' post-Agreement conduct and are not barred by the mutual release.

27. Section 21 (Intellectual Property/Return of Property) of the Settlement Agreement required Orlovsky to return all "SIELC Property" and acknowledged that all intellectual property the Orlovsky Parties created while shareholders and/or employees of SIELC constituted "works made for hire" belonging exclusively to SIELC. Orlovsky represented and warranted that he had returned all SIELC Property and had retained no copies of SIELC's proprietary information, including but not limited to trade secrets, software, equipment, columns, hardware, financial information, and customer lists.

28. Section 35 (No Right to Re-Employment; No Non-Competition) of the Settlement Agreement provided that Orlovsky would have "no non-competition obligations" with respect to SIELC. However, this section contained a critical limitation: Orlovsky "shall remain subject to the Illinois and federal trade secret statutes, provided, however, that the activities permitted pursuant

to Sections 24, 25, 26, 27, 28, 29, and 30 of this Agreement shall not be deemed to violate such statutes." This provision explicitly confirmed that while Orlovsky was freed from general non-compete obligations, he remained fully bound by trade secret law as to all activities outside the specific, narrow carve-outs enumerated in Sections 24 through 30.

29. The limited carve-outs in Sections 24 through 30 of the Settlement Agreement permitted Orlovsky to: (a) receive exclusive rights to SIELC's "Coresep" line of columns (Section 24)—a specific, separate product line distinct from the Primesep line at issue here; (b) retain a SOLIDWORKS license (Section 25); (c) purchase certain SIELC hardware and columns at cost or at a discount for resale—not manufacture (Sections 26-28); and (d) use the Mini Analyzer and Alltesta Analyzer for limited purposes (Sections 21(c), 29-30). None of these carve-outs permitted Orlovsky to independently manufacture or reproduce SIELC's proprietary Primesep adsorbent and packing material formulations.

**C. <u>Discovery of Defendants' Scheme</u>**

30. Zodiac Life Sciences PVT LTD ("Zodiac") is an entity located in Hyderabad, Telangana, India, that was one of SIELC's international distributors. During Orlovsky's tenure at SIELC, Zodiac purchased SIELC's chromatography columns for resale in the Indian market, generating consistent and growing revenue for SIELC.

31. In June 2023, Zodiac abruptly stopped purchasing SIELC products and was subsequently removed from SIELC's distributor list. At the time, SIELC did not know the reason for Zodiac's cessation of purchases.

32. In December 2025, SIELC discovered that Zodiac had published on its website (zodiaclifesciences.com) nearly 100 copies of SIELC's copyrighted technical application publications. In each copied application, Zodiac had substituted its own "Zodiac HST" column

name in place of SIELC's recommended column—for example, replacing SIELC's Primesep 100 column with "Zodiac HST OG," SIELC's Primesep A with "Zodiac HST A," SIELC's Primesep B with "Zodiac HST B," and SIELC's Primesep 200 with "Zodiac HST OG2."

33. Upon discovering the infringing publications, SIELC sent a cease-and-desist letter to Zodiac's director, Mr. Rambabu, demanding removal of the infringing material. SIELC also filed multiple DMCA takedown notices with Google, resulting in the removal of at least 17 infringing URLs from Google search results between approximately December 23 and December 26, 2025. Zodiac's website subsequently ceased operation, although Zodiac's copycat columns continue to be marketed and sold by third-party distributors worldwide.

34. Although SIELC knew that Zodiac was selling copycat columns under the "Zodiac HST" brand using SIELC's copied applications, SIELC could not determine how Zodiac had obtained or replicated SIELC's proprietary adsorbent chemistry, which is, as noted, highly complex and difficult to reverse-engineer, until the events of July 2026.

35. On July 8, 2026, SIELC discovered Orlovsky's and Helix's direct, personal role in supplying Zodiac with SIELC's misappropriated Trade Secrets when a purchase order from Zodiac was inadvertently transmitted to Orlovsky's dormant SIELC email address, vlad.orlovsky@sielc.com, rather than to his Helix email account. That purchase order, issued by Zodiac and addressed to "Dr Vlad, President, Company: HELIX Chromatography," requested 25 grams of "Primesep Bulk material[,] Equivalent Primesep D, 100A, 5um" for a total price of $1,550, to be shipped by FedEx from the United States to Zodiac's facility in Hyderabad, India.

36. The July 2026 purchase order confirms that Orlovsky and Helix have manufactured and supplied SIELC's proprietary, trade-secret-protected adsorbent chemistry to a known copycat manufacturer for the specific purpose of enabling further infringing and unfairly competitive sales.

**D. The Mechanics of the Scheme**

37. On information and belief, the scheme operated as follows: SIELC developed unique, proprietary adsorbent formulations that are the essential inputs for its chromatography columns. Each SIELC column product (such as Primesep 100, Primesep A, Primesep B, Primesep D, and Primesep 200) uses a distinct proprietary packing material with specific chemical properties that determine the column's analytical performance.

38. Orlovsky founded Helix, and at all relevant times has owned, controlled, and operated Helix as a company that competes with SIELC in the identical field of chromatography columns and adsorbent products.

39. Orlovsky, using the intimate knowledge of SIELC's trade secret adsorbent formulations and manufacturing processes that he acquired during his 15 years as SIELC's co-founder, President, and director, manufactured copycat packing material through Helix that replicated the performance characteristics of SIELC's Primesep-line adsorbents.

40. On information and belief, Helix supplied this copycat packing material to Zodiac, which used it to manufacture chromatography columns bearing Zodiac's own "Zodiac HST" brand names (*e.g.*, Zodiac HST OG as a replacement for SIELC's Primesep 100; Zodiac HST A as a replacement for Primesep A).

41. Zodiac then republished SIELC's technical application data—which SIELC had developed and published to demonstrate its own columns' capabilities—with Zodiac's column names substituted for SIELC's. This allowed Zodiac's customers to use SIELC's proven analytical methods while purchasing Zodiac's copycat columns instead of SIELC's originals.

42. By providing customers with SIELC's analytical data and a functionally equivalent column (because it was made with misappropriated formulations) at a lower price point, Zodiac was able to divert SIELC's customers and capture sales that would otherwise have gone to SIELC.

43. Zodiac's copycat columns, manufactured using the trade secrets misappropriated by Defendants, continue to be marketed and sold to customers around the world by third-party distributors, including AugustaChrom in Germany, Acute BIOScience and Kamgo Tech in India, Aurora Borealis Control B.V. in the Netherlands, and Uvison in the United Kingdom, thereby continuing to disseminate and perpetuate the harm to SIELC.

**E. Damages to SIELC**

44. As a direct and proximate result of Defendants' conduct, SIELC has suffered and continues to suffer substantial damages, including but not limited to the following:

(a) SIELC's distributor sales through Zodiac grew steadily through 2022. Following the commencement of the scheme, SIELC's sales through Zodiac collapsed to nothing, resulting in substantial lost profits to SIELC.

(b) Zodiac's copycat columns, made possible only by Defendants' misappropriation of SIELC's trade secrets, have diverted SIELC's end-user customers and allowed these customers to standardize on a competing product, making it significantly more difficult for SIELC to recover those customer relationships.

(c) Defendants' misappropriation has compromised the secrecy and exclusivity of SIELC's trade secret adsorbent formulations, diminishing the competitive advantage that those formulations provide and threatening SIELC's position in the marketplace.

45. Zodiac-branded columns remain listed for sale by distributors worldwide, including AugustaChrom (Germany), Acute BIOScience (India), Aurora Borealis Control B.V. (Netherlands), Kamgo Tech (India), and Uvison (UK), indicating that the harm to SIELC is ongoing and spreading.

46. Defendants' conduct was intentional, willful, and malicious. As SIELC's former President, co-founder, and one of its two principal shareholders for more than fifteen years, Orlovsky knew, better than virtually anyone, the value, secrecy, and confidential nature of the trade secrets he supplied to Zodiac, and he knew that Section 35 of the Settlement Agreement expressly and specifically bound him to comply with Illinois and federal trade secret law.

**COUNT I**
**BREACH OF CONTRACT**
***(Against Orlovsky)***

47. SIELC realleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

48. The Settlement Agreement is a valid and enforceable contract between SIELC and Orlovsky.

49. SIELC performed its obligations under the Settlement Agreement, including paying the purchase price for Orlovsky's shares ($1,140,000), providing the consideration and benefits specified in the Settlement Agreement, and fulfilling the other terms of the settlement.

50. Orlovsky has breached the Settlement Agreement in multiple material respects, including but not limited to:

(a) Violating Section 21 by failing to return, and by retaining and using, SIELC Property and Intellectual Property, including trade secret adsorbent formulations, after representing and warranting that he had returned all such property and retained no copies; and

(b) Violating Section 35 by engaging in conduct that violates the Illinois and federal trade secret statutes—to which Orlovsky Parties expressly agreed to "remain subject"—namely, manufacturing and supplying SIELC's proprietary packing material to Zodiac. This activity is *not* among the limited carve-outs in Sections 24 through 30 for the Coresep Columns, the Mini Analyzer, the SOLIDWORKS license, or the resale of SIELC Hardware and Columns. The Settlement Agreement expressly stated that only "the activities permitted pursuant to Sections 24, 25, 26, 27, 28, 29, and 30" would "not be deemed to violate" the trade secret statutes;

Orlovsky's manufacture of Primesep-equivalent packing material for supply to a third party falls entirely outside those enumerated carve-outs.

51. As a direct and proximate result of Orlovsky's breaches, SIELC has suffered and continues to suffer damages, including without limitation lost profits, lost customer goodwill and relationships, and the diminished value of its misappropriated trade secrets.

**COUNT II**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 ET SEQ.**
***(Against Orlovsky and Helix)***

52. SIELC realleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

53. SIELC's proprietary adsorbent and packing material formulations and manufacturing know-how constitute "trade secrets" within the meaning of 18 U.S.C. § 1839(3): (1) the formulations are not generally known outside of SIELC's business; (2) within SIELC, access is limited to a small number of key personnel; (3) SIELC has taken extensive measures to guard the secrecy of the formulations; (4) the formulations are of substantial economic value to SIELC and would be of substantial value to competitors such as Defendants; (5) SIELC expended great time and expense (over 24 years and millions of dollars) in developing the formulations; and (6) the formulations are highly complex and difficult to properly acquire or independently duplicate through legitimate means.

54. SIELC has taken reasonable measures to keep this information secret, including limiting access to key personnel and maintaining physical and electronic security. The information was developed over more than 24 years at substantial expense, is highly complex, and is essentially impossible to reverse-engineer or independently duplicate.

55. Defendants have misappropriated SIELC's trade secrets within the meaning of 18 U.S.C. § 1839(5). Orlovsky acquired SIELC's trade secret formulations and manufacturing know-

how during his 15-year tenure as co-founder, President, and director of SIELC. After his departure, Orlovsky—through Helix—disclosed and used those trade secrets without SIELC's consent, in breach of the duty of confidentiality he owed to SIELC (which was confirmed and reinforced by Sections 21 and 35 of the Settlement Agreement), by manufacturing copycat packing material that replicates the performance of SIELC's Primesep-line adsorbents and supplying it to Zodiac for use in competing columns.

56. Defendants have used SIELC's misappropriated trade secrets in their own business by manufacturing and selling copycat packing material through Helix Chromatography, generating revenue at SIELC's expense.

57. SIELC's trade secrets relate to products and services used in, and intended for use in, interstate and foreign commerce within the meaning of 18 U.S.C. § 1836(b)(1). SIELC sells its chromatography columns to customers throughout the United States and internationally, including to distributors in India.

58. Defendants' misappropriation was willful and malicious. Orlovsky knew that SIELC's adsorbent formulations were trade secrets; he expressly acknowledged in the Settlement Agreement that he "shall remain subject to the Illinois and federal trade secret statutes"; and he nonetheless deliberately used those formulations to manufacture competing products through Helix and to supply them to a former SIELC distributor for the purpose of diverting SIELC's customers and revenue.

59. As a direct and proximate result of Defendants' misappropriation, SIELC has suffered and continues to suffer damages, including without limitation lost profits, lost customer goodwill and relationships, and the diminished value of its misappropriated trade secrets.

**COUNT III**
**MISAPPROPRIATION OF TRADE SECRETS UNDER THE ILLINOIS TRADE SECRETS ACT, 765 ILCS 1065/1 ET SEQ.**
***(Against Orlovsky and Helix)***

60. SIELC realleges and incorporates the allegations set forth in paragraphs 1 through 46 as if fully set forth herein.

61. SIELC's proprietary adsorbent and packing material formulations and manufacturing know-how constitute "trade secrets" within the meaning of 765 ILCS 1065/2(d): (1) the formulations are not generally known outside of SIELC's business; (2) within SIELC, access is limited to a small number of key personnel; (3) SIELC has taken extensive measures to guard the secrecy of the formulations; (4) the formulations are of substantial economic value to SIELC and would be of substantial value to competitors such as Defendants; (5) SIELC expended great time and expense (over 24 years and millions of dollars) in developing the formulations; and (6) the formulations are highly complex and difficult to properly acquire or independently duplicate through legitimate means.

62. SIELC has taken reasonable measures to keep this information secret, including limiting access to key personnel and maintaining physical and electronic security. The information was developed over more than 24 years at substantial expense, is highly complex, and is essentially impossible to reverse-engineer or independently duplicate.

63. Defendants have misappropriated SIELC's trade secrets within the meaning of 765 ILCS 1065/2(b). Orlovsky acquired SIELC's trade secret formulations and manufacturing know-how during his 15-year tenure as co-founder, President, and director of SIELC. After his departure, Orlovsky—through Helix—disclosed and used those trade secrets without SIELC's consent, in breach of the duty of confidentiality he owed to SIELC (which was confirmed and reinforced by Sections 21 and 35 of the Settlement Agreement), by manufacturing copycat packing material that

replicates the performance of SIELC's Primesep-line adsorbents and supplying it to Zodiac for use in competing columns.

64. Defendants have used SIELC's misappropriated trade secrets in their own business by manufacturing and selling copycat packing material through Helix Chromatography, generating revenue at SIELC's expense.

65. Defendants' misappropriation was willful and malicious. Orlovsky knew that SIELC's adsorbent formulations were trade secrets; he expressly acknowledged in the Settlement Agreement that he "shall remain subject to the Illinois and federal trade secret statutes"; and he nonetheless deliberately used those formulations to manufacture competing products through Helix and to supply them to a former SIELC distributor for the purpose of diverting SIELC's customers and revenue.

66. As a direct and proximate result of Defendants' misappropriation, SIELC has suffered and continues to suffer damages, including without limitation lost profits, lost customer goodwill and relationships, and the diminished value of its misappropriated trade secrets.

## COUNT IV
## TORTIOUS INTERFERENCE WITH CONTRACT
***(Against Helix)***

67. SIELC realleges and incorporates the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

68. The Settlement Agreement is a valid and enforceable contract between SIELC and Orlovsky that governs, among other things, Orlovsky's obligations regarding SIELC's intellectual property and trade secrets.

69. Helix, through Orlovsky's ownership, control, and direction, had actual and detailed knowledge of the Settlement Agreement and all of its terms. Orlovsky is the founder, owner, and operator of Helix and personally negotiated and executed the Settlement Agreement.

Helix's knowledge is further established by the fact that Helix was expressly named in, and received $171,250 in royalty payments directly under, the Settlement Agreement. Helix therefore knew that the Settlement Agreement required Orlovsky to return all SIELC Property and intellectual property (Section 21) and required Orlovsky to remain subject to the Illinois and federal trade secret statutes except as to the narrow activities permitted in Sections 24 through 30 (Section 35).

70. Helix's interference was not undertaken to protect any legitimate business interest of its own independent of Orlovsky's breach. Rather, Helix served as the very instrumentality through which Orlovsky carried out his breach, such that Helix's conduct was motivated solely by Orlovsky's and Helix's shared pecuniary interest in exploiting SIELC's misappropriated technology. This conduct warrants no privilege or justification defense.

71. As a direct result of Helix's participation, inducement, and facilitation, Orlovsky breached the Settlement Agreement by: (a) failing to return and by retaining and using SIELC's trade secret adsorbent formulations after representing and warranting that he had returned all such property (Section 21); and (b) violating the Illinois and federal trade secret statutes to which he expressly agreed to remain subject (Section 35).

72. As a direct and proximate result of Helix's tortious interference with the Settlement Agreement, SIELC has suffered and continues to suffer damages, including without limitation lost profits, loss of the value and exclusivity of its trade secret adsorbent formulations, loss of customer relationships, and the costs of this litigation.

## PRAYER FOR RELIEF

WHEREFORE, SIELC respectfully requests that this Court enter judgment in its favor and against Defendants, jointly and severally where applicable, and award SIELC the following relief:

A. Compensatory damages in an amount to be proven at trial, but not less than $2,000,000, together with all continuing and future lost profits caused by Defendants' conduct;

B. Legal restitution of the amounts paid to defendants under the Settlement Agreement for which plaintiff did not receive its benefit of the bargain;

C. Disgorgement of all profits Defendants have obtained through their unlawful manufacture, use, and sale of SIELC's misappropriated trade secrets and confidential information;

D. Exemplary damages under 18 U.S.C. § 1836(b)(3)(C) and 765 ILCS 1065/4, in an amount up to two times the compensatory damages awarded, based on Defendants' willful and malicious misappropriation; and punitive damages for Helix's tortious interference with contract;

E. Injunctive relief enjoining Defendants, and all persons acting in concert with them, from: (i) manufacturing, marketing, supplying, or selling any adsorbent, packing material, or chromatography column derived from, or equivalent to, SIELC's proprietary Primesep-line formulations or any other SIELC trade secret or confidential information; (ii) supplying any such material to Zodiac Life Sciences Pvt. Ltd. or any other third party; and (iii) using or disclosing any SIELC trade secret, confidential information, or intellectual property;

F. An order requiring Defendants to return to SIELC, or certify the destruction of, all SIELC confidential information, trade secrets, and intellectual property in their possession, custody, or control;

G. An accounting of all profits Defendants have derived from the sale of products incorporating or derived from SIELC's misappropriated trade secrets;

H. Pre-judgment and post-judgment interest at the maximum rate allowed by law;

I. Reasonable attorneys' fees and costs of suit pursuant to Section 42 of the Settlement Agreement, 18 U.S.C. § 1836(b)(3)(D), and 765 ILCS 1065; and

J. Such other and further relief as this Court deems just and proper.

**JURY TRIAL DEMAND**

SIELC hereby demands a trial by jury on all issues so triable, pursuant to Federal Rule of Civil Procedure 38(b).

Dated: August 6, 2026

Respectfully Submitted,

**SIELC Technologies Corporation**

By: */s/ Mark H. Horwitch*
One of Its Attorneys

Mark H. Horwitch
Katherine M. O'Brien
Jacob B. Berger
TABET DIVITO & ROTHSTEIN LLC
209 S. LaSalle St., Suite 700
Chicago, IL 60604
Telephone: (312) 762-9465
mhorwitch@tdrlaw.com
kobrien@tdrlaw.com
jberger@tdrlaw.com